**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Eisen & Associates, Ltd. | No. CV-18-02120-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| CoxCom, Inc., *et al* | |
| Defendant. | |

At issue is Defendant CoxCom LLC's (d/b/a Cox Communications) Motion to Dismiss (Doc. 16, Mot.), to which Plaintiff Kenneth Eisen & Associates, Ltd. filed a Response (Doc. 21, Resp.), and Defendant filed a Reply (Doc. 24, Reply). The Court resolves the Motion without oral argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court grants in part and denies in part Defendant's Motion.

**I.  BACKGROUND**

Plaintiff alleges the following facts in the Complaint.[1] (Doc. 1-1 at 5-25, Compl.) In 2001, Plaintiff entered into an Accounts Receivable Purchase Agreement with Defendant. (Compl. ¶ 6.) As part of the Purchase Agreement, Plaintiff bought 8,889 accounts of cable, telephone, and internet customers whose service Defendant had recently disconnected and who owed money and/or the return of equipment. (Compl. ¶ 7.) Under

---

[1] In the Complaint, Plaintiff mistakenly names CoxCom, Inc., instead of CoxCom LLC, as Defendant. Plaintiff also names Defendants John Does I-V; Jane Does I-V; White Corporations I-V; Black Partnerships I-V; and Blue Limited Liability Companies I-V, and seeks to reserve the right to amend the Complaint when the true names of such Defendants are ascertained.

the terms of the Purchase Agreement, Defendant was required to forward any payments it received on the purchased accounts to Plaintiff. (Compl. ¶ 8, Ex. A.) The Purchase Agreement further provided that Defendant would pay Plaintiff $12.50 for each piece of previously unreturned equipment that was subsequently received by Defendant. (Compl. ¶ 9, Ex. A.) The Purchase Agreement stated that Defendant's policy would be not to reconnect any customer who had an unpaid balance or unreturned equipment but to refer any such customers to Plaintiff before reconnecting services. (Compl. ¶ 12, Ex. A.) Defendant also agreed to set up, maintain and share records with Plaintiff regarding account balances and returned equipment. (Compl. ¶ 14, Ex. A.)

Plaintiff performed collection services on the accounts from 2001 until 2016, when Defendant unilaterally terminated the Purchase Agreement and cut off Plaintiff's access to account records. (Compl. ¶¶ 16-20.) Prior to losing access to account records, Plaintiff noticed instances where Defendant had received payments or equipment or had reconnected customers with unpaid balances, which Plaintiff alleges violated the Purchase Agreement. (Compl. ¶¶ 21, 22, 25.) In the Complaint, Plaintiff raises claims for breach of contract, negligence, unjust enrichment, and conversion against Defendant. (Compl. ¶¶ 39-97.) Defendant now moves to dismiss Plaintiff's negligence, unjust enrichment, and conversion claims for failure to state a claim.

**II.    LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When analyzing a complaint for failure to state a claim for relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). On a Rule 12(b)(6) motion, Federal Rule of Civil Procedure 8(a) governs and requires that, to avoid

dismissal of a claim, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**III. ANALYSIS**

    **A. Arizona's Economic Loss Doctrine**

Defendant first argues that Arizona's economic loss doctrine warrants dismissal of Plaintiff's tort claims for negligence and conversion. Arizona's economic loss doctrine is a "common law rule limiting a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property." *Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance, Inc.*, 223 P.3d 664, 667 (Ariz. 2010). The rule's purpose is "to encourage private ordering of economic relationships and to uphold the expectations of the parties by limiting a plaintiff to contractual remedies for the loss of the benefits of the bargain." *Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1050 (D. Ariz. 2010).

The economic loss doctrine does not bar all tort claims that seek only economic damages. *Id.* Arizona courts typically apply the economic loss doctrine in the contexts of product liability or construction defect cases. *See Flagstaff*, 223 P.3d at 667. In cases where courts have applied the rule outside these contexts, the parties had detailed contracts allocating risk of loss and specifying remedies. *See, e.g., Cook v. Orkin Exterminating Co., Inc.*, 258 P.3d 149 (Ariz. Ct. App. 2011); *Sherman v. Premier Garage Sys., LLC*, No. CV-10-0269-PHX-MHM, 2010 WL 3023320, at *4 (D. Ariz. July 30, 2010). While the Court recognizes that the scope of the economic loss rule is not crystal clear, little support exists for the argument that Arizona courts intend to apply the rule outside the contexts they have already identified. In addition, the Ninth Circuit Court of Appeals has observed that, in cases applying the rule "outside the product liability context, the [economic loss] doctrine has produced difficulty and confusion." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 874 (9th Cir. 2007).

Federal courts are not free to expand the existing scope of state law without clear guidance from the state's highest court. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d

1017, 1024 (9th Cir. 2008). This is neither a product liability nor a construction defect case. Furthermore, the contract here does not contain a calculated allocation of risk or choice of remedies by the parties. Defendant argues that the economic loss doctrine has not only been extended by Arizona courts beyond product liability and construction defect cases, but that the doctrine applies whenever a tort "claim stems from the alleged failure to perform promises under the parties' contract and . . . the harm alleged in tort is the same harm alleged in the contract." (Reply at 5.) The Court does not find support for Defendant's broad interpretation of the scope of the economic loss doctrine in Arizona.

The applicable case law provides that, in applying the economic loss doctrine, courts must consider the "underlying contract and tort policies" with respect to the particular setting in which the contract was formed. *Flagstaff*, 223 P.3d at 669. In *Flagstaff*, the Arizona Supreme Court found that the "contract law policy of upholding the expectations of the parties" was particularly strong in the context of construction-related contracts because they "often are negotiated between the parties on a project-specific basis and have detailed provisions allocating risk of loss and specifying remedies." *Id.* Contrary to Defendant's contention, application of the economic loss doctrine depends less on whether tort claims would be duplicative and more on whether allowing tort claims would subvert the parties' allocation of risk and choice of remedies as evidenced by a detailed contract. Arizona courts have not expressed an intent to apply the economic loss doctrine where no detailed contractual provisions exist.

Nevertheless, Defendant argues that courts have extended the doctrine to cover the Purchase Agreement at issue here. Defendant relies on *FTC Solar Capital XIX, LLC v. Folium Energy Development, LLC*—a 2017 decision in this District where the economic loss doctrine was applied to bar tort claims arising from a purchase-sale agreement. No. CV-15-00875-PHX-DJH, 2017 WL 3841490 (D. Ariz. Mar. 16, 2017). However, that case does not persuade the Court to apply the doctrine here.

Unlike construction-related contracts such as the one at issue in *Flagstaff*, purchase agreements do not, by their very nature, suggest that the parties have engaged in project-

specific negotiations allocating risk and establishing remedies. It is thus not evident that the policy of upholding parties' contractual expectations is particularly applicable to purchase agreements generally. Furthermore, in *FTC Solar*, the court did not rely on the fact that the contract at issue was a purchase-sale agreement but rather on "the parties' equal bargaining power and arm's length negotiations," in finding that "[a]llowing recovery in tort . . . would undermine the parties' expectations." *Id.* at *4.

Here, nothing in the Purchase Agreement suggests that it was the result of significant negotiations between Defendant and Plaintiff. Nor does the Purchase Agreement set forth detailed allocations of risk or specify remedies. For example, the contract states that "it is [Defendant's] policy not to permit any Customer to reconnect service so long as any Customer has an outstanding Account balance or unreturned Equipment." (Compl. Ex. A.) But the Purchase Agreement does not state that Defendant is prohibited from reconnecting such customers or specify a remedy if Defendant does. Indeed, nowhere in the two-page agreement is a remedy specified. The absence of detailed terms and specific remedies in the Purchase Agreement sets it apart from contracts to which Arizona courts have applied the economic loss doctrine, especially outside of the construction defect and product liability contexts. Because the Court may not expand the scope of state law, the economic loss doctrine does not provide a basis for dismissal of Plaintiff's tort claims.

### B. Failure to State a Claim for Conversion

Defendant also moves to dismiss Plaintiff's conversion claim by arguing that Plaintiff seeks to recover money owed as the result of a contractual obligation, which is not the proper subject of a conversion claim. (Mot. at 12.) The Court agrees. Under Arizona law, conversion is "an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004). "[M]oney can be the subject of a conversion provided that it can be described, identified or segregated, and an obligation to treat it in a specific manner is established." *Autoville, Inc. v. Friedman*, 510 P.2d 400, 402 (Ariz. Ct. App. 1973).

However, "[m]oney is not the proper subject of a conversion claim when the claim is used merely to collect on a debt that could be satisfied by money generally." *Liberty Life Ins. Co. v. Myers*, No. CV 10-2024-PHX-JAT, 2013 WL 530317, at *13 (D. Ariz. Feb. 12, 2013) (internal quotations omitted). In *Autoville*, the Arizona Court of Appeals held that the withholding of money owed under contract does not give rise to a conversion claim. *Autoville, Inc.*, 510 P.2d at 403.

Here, Plaintiff purchased from Defendant accounts on which customers owed money and/or equipment. (Compl. ¶ 7.) The Purchase Agreement specified that any money paid to Defendant on these accounts would be forwarded to Plaintiff. (Compl. ¶ 8, Ex. A.) The Contract also required Defendant to pay a fixed amount of money to Plaintiff for any equipment returned. (Compl. ¶ 9, Ex. A.) Plaintiff claims that Defendant converted Plaintiff's property by retaining money and equipment received by Defendant on these accounts.

Under the Purchase Agreement, Plaintiff essentially had a legal right to collect money from Defendant and debts owed by customers whose service was disconnected by Defendant. Because a conversion claim cannot be used "to collect on a debt that could be satisfied by money generally," the money owed to Plaintiff under the Purchase Agreement cannot be the basis for a conversion claim. *Liberty Life Ins. Co.*, 2013 WL 530317, at *13. The Court must therefore dismiss Plaintiff's conversion claim with prejudice.

### C. Failure to State a Claim for Unjust Enrichment

Defendant also argues that Plaintiff fails to state a claim for unjust enrichment because the Purchase Agreement provides an adequate remedy at law. Defendant contends that an element of a valid unjust enrichment claim is that there be no adequate remedy at law and therefore that "recovery under *quantum meruit* presupposes that no enforceable written or oral contract exists." *See Levine v. Haralson, Miller, Pitt, Feldman, & McAnally, P.L.C.*, 418 P.3d 1007, 1010 (Ariz. Ct. App. 2018). While Plaintiff may be barred from recovery under an unjust enrichment claim due to the existence of the Purchase Agreement,

Plaintiff is not necessarily barred from pleading unjust enrichment as an alternative to breach of contract.

Defendant argues that pleading unjust enrichment in the alternative is only appropriate where a plaintiff is able "to articulate a basis for unjust enrichment that does not hinge on Defendant' alleged breach of contract." *See Aspect Sys., Inc. v. Lam Research Corp.*, No. 06-1620-PHX-NVW, 2006 WL 2683642, at *5 (D. Ariz. Sept. 16, 2006). In response, Plaintiff states that "the mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery" where the plaintiff has not received the benefit of its bargain. *See Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000).

Because an element of unjust enrichment is that no contractual remedy exists, the Court agrees with Defendant that an unjust enrichment claim that relies on a contract cannot stand. Here, Plaintiff's unjust enrichment claim alleges that Defendant was enriched by its failure to abide by the terms of the Purchase Agreement. Because Plaintiff does not articulate an unjust enrichment theory that does not depend on breach of the Purchase Agreement, Plaintiff's unjust enrichment claim fails. Considering Plaintiff's allegations in the Complaint, the Court does not find it plausible that Plaintiff can state an unjust enrichment claim that does not depend on the terms of the Purchase Agreement, so the Court dismisses the claim with prejudice. *See Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000).

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendant's Motion to Dismiss (Doc. 16). Count 3, for unjust enrichment, and Count 4, for conversion, are dismissed with prejudice, but the Court denies Defendant's Motion as to Count 2, for negligence, and for attorney's fees under A.R.S. § 12-341.01.

Dated this 19th day of February, 2019.

Honorable John J. Tuchi
United States District Judge