**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Eisen and Associates LTD, | No. CV-18-02120-PHX-MTL |
| Petitioner, | **ORDER** |
| v. | |
| CoxCom LLC, *et al.*, | |
| Defendant. | |

Pending before the Court is Plaintiff's Motion for Partial Summary Judgment on its Breach of Contract Claim - Liability - (Doc. 45), and Defendant's Motion for Summary Judgment on all claims (Doc. 47). The motions are fully briefed, and the Court heard oral argument on January 29, 2020. As the Court indicated at oral argument, the Court denies Plaintiff's Motion for Partial Summary Judgment. The Court grants Defendant's Motion for Summary Judgment in part and denies it in part.

## I. Background

The following facts are not disputed. On or about January 5, 2001, Plaintiff Kenneth Eisen and Associates, Ltd. ("KEA") entered into an Accounts Receivable Purchase Agreement (the "Purchase Agreement") with CoxCom, LLC ("Cox"). (Doc. 48 at 2, ¶ 1); (Doc. 54 at 2, ¶ 1.) Pursuant to the Purchase Agreement, KEA purchased accounts receivable ("the KEA accounts") for a number[1] of Cox's cable, telephone and internet customers who owed Cox money and/or the return of equipment, and whose services had

---

[1] KEA claims that it purchased 8,889 accounts receivable pursuant to the Purchase Agreement (Doc. 46 at 2, ¶ 2); Cox claims that there were only 7,162 (or 7,216) accounts subject to the Purchase Agreement (Doc. 54 at 2, ¶ 2); (Doc. 54-5 at 3, ¶ 8).

been disconnected or discontinued within the 30-day period immediately preceding the effective date of the Purchase Agreement.[2] (Doc. 1-1 at 6, ¶ 7); (Doc. 48 at 1, ¶ 1); (Doc. 54 at 2, ¶ 2.) Under the terms of the Purchase Agreement, Cox agreed to forward to KEA all payments that Cox received from customers on the KEA Accounts after the closing date of the agreement. (Doc. 46 at 2, ¶ 3); (Doc. 54 at 2, ¶ 3.) The Purchase Agreement also required Cox to pay KEA $12.50 for each piece of equipment[3] recovered by Cox from a customer on a KEA account after the closing date of the Purchase Agreement, regardless of whether the equipment was delivered directly to Cox by the customer or from KEA to Cox. (Doc. 46 at 2, ¶¶ 5, 6); (Doc. 54 at 2 ¶¶ 5, 6); (Doc. 46-1 at 3.)

The Purchase Agreement also stated the following:

> <u>Returned Equipment</u>: . . . [I]t is Cox's policy not to permit any Customer to reconnect service so long as any Customer has an outstanding Account balance or unreturned Equipment. Cox agrees to continue this policy with respect to Accounts purchased by KEA and will refer such Customers to KEA for settlement of their Accounts before reconnecting services. Cox agrees to maintain sufficient coding records of all Equipment so that Equipment returns are readily identifiable.
>
> . . .
>
> <u>Information Support</u>: Cox agrees that it will set up and maintain a computer terminal at the premises of KEA which will permit KEA and Cox to share information pertaining to the Accounts and Equipment and otherwise exchange information in order to keep accurate status of the balances of Accounts and outstanding and returned Equipment. In addition, Cox will promptly provide that Customer data requested by KEA which is customarily used for collection purposes by the collection industry, and does not violate any customer privacy rights, to assist KEA in its collection efforts, including without limitation, copies of signed Customer contracts.

---

[2] As further consideration, the Purchase Agreement contained a "Future Account Placement" provision under which Cox agreed to place with KEA at least one-half of its collection agency placements every year on a contingency basis, if KEA met certain performance standards. (Doc. 46-1 at 3.) KEA and Cox executed numerous subsequent collection agreements whereby KEA performed collections services on a contingency basis for accounts that Cox owned. (Doc. 46-1 at 13); (Doc. 47 at 4.) The subsequent collection agreements are not at issue in this action. (Doc. 46-1 at 13); (Doc. 47 at 4.) And the parties do not maintain that the subsequent collection agreements modified the Purchase Agreement.

[3] The Purchase Agreement defines "Equipment" as "[v]arious equipment consisting of cable convertors and computer modems [that were] retained by Account Customers and not returned to Cox during the Account Period." (Doc. 46-1 at 2.)

(Doc. 46-1 at 3); (Doc. 46 at 3, ¶ 11); (Doc. 54 at 3, ¶ 11.)

KEA engaged in collections efforts on the KEA accounts from 2001 until at least 2016.[4] (Doc. 46 at 3, ¶ 13); (Doc. 54 at 3, ¶ 13.) During the entirety of Cox's business relationship with KEA, Cox sent KEA "daily journals" reflecting payments and equipment returns made by customers to Cox on the KEA accounts. (Doc. 54 at 4, ¶ 16); (Doc. 46-1 at 37); (Doc. 46-1 at 58.) KEA then utilized the daily journals to input information into KEA's internal database, Debtmaster. (Doc. 48 at 6, ¶ 33); (Doc. 52 at 6, ¶ 33.) Based on the transactions reflected in the daily journals, KEA would then create and send invoices to Cox, seeking reimbursement for payments and equipment returns that were made to Cox on the KEA accounts. (Doc. 48 at 7, ¶ 37); (Doc. 52 at 7, ¶ 37.) Cox paid all of KEA's invoices from 2001 to 2016. (Doc. 48 at 7, ¶ 38); (Doc. 52 at 7, ¶ 38.)

Between 2001 and June 2016, in addition to sending daily journals, Cox granted KEA read-only access to Cox's system, ICOMS, where KEA could view Cox's records pertaining to customer payments and equipment returns on the KEA Accounts. (Doc. 48 at 5, ¶ 25); (Doc. 52 at 5, ¶ 25.) The parties agree that ICOMS contained accurate data about customer payments and equipment returns, and that ICOMS contained records regarding payments that Cox may have remitted to KEA on the KEA accounts.[5]

On May 26, 2016, Cox notified KEA in a letter that Cox was unilaterally terminating its business relationship with KEA effective June 30, 2016. (Doc. 46-1 at 68); (Doc. 46 at 3, ¶ 14); (Doc. 54 at 3, ¶ 14.) After receiving this letter, KEA performed "spot checks" on some of the KEA accounts by comparing ICOMS with Debtmaster. (Doc. 46-1 at 18); (Doc. 46 at 4, ¶¶ 20, 21); (Doc. 54 at 5, ¶¶ 20, 21.) During the spot checks, KEA noted that some KEA accounts reflected customer balances in ICOMS that were less than the balances reflected in Debtmaster. (Doc. 46-1 at 18); (Doc. 46 at 4, ¶¶ 20, 21); (Doc. 54 at 5, ¶¶ 20, 21.) KEA did not perform any spot checks on the KEA accounts prior to its receipt of the termination letter on May 26, 2016. (Doc. 48 at 5, ¶ 26); (Doc. 52 at 5, ¶ 26.)

---

[4] KEA states that it is still engaging in collection efforts on the KEA accounts. (Doc. 46 at 3, ¶ 13.)
[5] The parties conceded this at oral argument.

In June 2016, Cox terminated KEA's access to ICOMS. (Doc. 46 at 3, 6, ¶¶ 15, 32); (Doc. 54 at 3-4, ¶ 15.) KEA and Cox have identified multiple instances where Cox accepted payments from customers on the KEA accounts, received equipment returns on the KEA accounts, or issued credits on the KEA accounts. (Doc. 46 at 5, ¶ 25); (Doc. 54 at 6, ¶ 25.) The parties dispute whether Cox then transmitted proper payment to KEA for those transactions.

KEA filed the Complaint in Maricopa County Superior Court on June 1, 2018, raising claims for breach of contract (Count 1) and negligence (Count 2).[6] (Doc. 1-1.) Cox removed the action to this Court on July 5, 2018. (Doc. 1.)

KEA's breach of contract (Count 1) and negligence (Count 2) claims allege that Cox breached the Purchase Agreement and/or its duties by: terminating KEA's access to ICOMS data in June 2016; failing to share information that would enable KEA to keep accurate status of the balances of KEA accounts and outstanding and returned equipment; failing to reconcile amounts owed to KEA; failing to provide a proper accounting of KEA accounts to KEA; providing "amnesty credits" to customers on the KEA accounts; failing to remit payment to KEA for payments made by customers to Cox; failing to remit payment to KEA for returned equipment; and failing to remit payment to KEA for credits issued by Cox to customers on the KEA accounts. (Doc. 1-1 at 10-13, ¶¶ 39-65.) KEA alleges in the Complaint that Cox did not report payments or equipment returns on 20% of the KEA accounts. (Doc. 48 at 9, ¶ 49); (Doc. 52 at 9, ¶ 49.) KEA estimates that Cox owes KEA $100,000 for equipment returns (Doc. 48 at 9, ¶ 50), (Doc. 52 at 9, ¶ 50), and approximately $301,482 for payments that Cox received from customers but did not forward to KEA. (Doc. 48 at 8, ¶ 47); (Doc. 52 at 8, ¶ 47.)

Cox argues in its Motion for Summary Judgment (Doc. 47) that KEA's damages are too speculative to sustain a breach of contract or negligence claim, that KEA waived any breaches under the Purchase Agreement by operating under the same conduct for 15 years

---

[6] The Complaint additionally raised claims for unjust enrichment (Count 3) and conversion (Count 4), which this Court previously dismissed. (Doc. 1-1 at 14-17, ¶¶ 67-97); (Doc. 37 at 7.)

- 4 -

without raising a concern, and that KEA's claims are time-barred under the applicable statute of limitations. (Doc. 47 at 2-3.)

## II. Legal Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (internal citations omitted); *see also Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted).

## III. KEA's Motion for Partial Summary Judgment

The parties disagree about the duration of Cox's duties under the Purchase Agreement to "set up and maintain a computer terminal at the premises of KEA" and "maintain sufficient coding records of all Equipment . . . ." *See* (Doc. 46-1 at 3.) The parties also dispute whether the Purchase Agreement required Cox to report payments or equipment returns to KEA, and whether the Purchase Agreement imposed an obligation for Cox to refrain from reconnecting services for customers with outstanding balances on the KEA accounts. The Court addresses each dispute in turn.

### A. Principles of contract interpretation

KEA argues, and Cox does not dispute, that Arizona law governs the interpretation of the purchase agreement. (Doc. 45 at 6); (Doc. 53 at 8 n.2.) The Court agrees. *See* Restatement (Second) of Conflict of Laws § 188 (in the absence of an explicit choice of law, the contractual rights and duties of the parties are determined by the local law of the state that has the most significant relationship to the transaction.

Contract interpretation in Arizona is generally a matter of law, not a question of

fact. *See Willamette Crushing Co. v. State ex rel. Dep't of Transportation*, 188 Ariz. 79, 81 (App. 1997); *Scholten v. Blackhawk Partners*, 184 Ariz. 326, 328 (App. 1995). "Generally, and in Arizona, a court will attempt to enforce a contract according to the parties' intent." *State v. Mabery Ranch, Co., L.L.C.*, 216 Ariz. 233, 241, ¶ 28 (App. 2007) (*quoting Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152 (1993)). In Arizona, the plain language of the contract governs. *Mass. Bonding & Ins. Co. v. Ariz. Concrete Co.*, 47 Ariz. 420, 428 (1936). Courts also apply a "standard of reasonableness" to contract language, so that the contract is construed "in its entirety and in such a way that every part is given effect." *State ex rel. Goddard v. R.J. Reynolds Tobacco Co.*, 206 Ariz. 117, 120, ¶ 12 (App. 2003) (internal citations omitted). If the plain language of the contract is clear and unambiguous, there is no need for interpretation. *Grosvenor Holdings, L.C. v. Figueroa*, 218 P.3d 1045, 1050, ¶ 9 (App. 2009).

If the court finds that a contract is ambiguous, however, extrinsic evidence may be resorted to for the purpose of ascertaining its real meaning. *Associated Students of Univ. of Ariz. v. Ariz. Bd. of Regents*, 120 Ariz. 100, 104 (App. 1978); *Watson Const. Co. v. Reppel Steel & Supply Co., Inc.*, 123 Ariz. 138, 142 (App. 1979) ("question of whether a contract is ambiguous is initially a question of law for the court to decide"). If after considering the extrinsic evidence, the Court determines that either party's offered interpretation is reasonable (i.e., if the extrinsic evidence establishes "controversy over what occurred and what inferences to draw from the events"), the matter is properly submitted to the jury. *Taylor*, 175 Ariz. at 158-59; *Mabery Ranch, Co., L.L.C.*, 216 Ariz. at 241, ¶ 28; *see also Watson Const. Co.*, 123 Ariz. at 142 (entry of summary judgment precluded if court determines that ambiguity exists and resolution of ambiguity involves a material issue of fact).

Notably, a contract is not ambiguous just because the parties disagree about its meaning. *In re Estate of Lamparella*, 210 Ariz. 246, 250, ¶ 21 (App. 2005) (internal citations omitted). Language in a contract is only ambiguous when it can reasonably be construed to have more than one meaning, and such construction cannot be determined within the four corners of the instrument. *Id.*; *Associated Students of Univ. of Ariz.*, 120

Ariz. at 104. Omissions in contracts do not necessarily cause ambiguity. *See Smith v. Those Certain Ins. Cos. Subscribing to Aircraft Hull Ins. Policy No. Reinco 57*, 132 Ariz. 371, 373 (App. 1982) (failure to fill in the blank spaces did not create ambiguity, but instead reflected an absence of any agreement).

**B. Duration of Cox's duties**

Under the section titled "Information Support," the Purchase Agreement states that Cox "will set up and maintain a computer terminal at the premises of KEA which will permit KEA and Cox to share information pertaining to the Accounts and Equipment and otherwise exchange information in order to keep accurate status of the balances of Accounts and outstanding and returned Equipment." (Doc. 46-1 at 3.) Under the section titled "Returned Equipment," the Purchase Agreement states that "Cox agrees to maintain sufficient coding records of all Equipment so that Equipment returns are readily identifiable." (*Id.*) The parties agree that there is no expiration date to these duties expressly enumerated within the four corners of the document.

KEA argues that, in order to avoid an interference with KEA's ability to monitor its purchased accounts, the "Information Support" provision requires Cox to grant KEA access to ICOMS, and to update information about payments and equipment returns received by Cox, in perpetuity. (Doc. 45 at 4, 7); (Doc. 46 at 4, ¶ 19.) Cox argues that because the Purchase Agreement is silent as to its duration, the Court should deem the contract to be effective "for a reasonable amount of time." (Doc. 53 at 8) (*quoting Roosevelt Irrigation District v. United States*, CV-15-00448-JJT, 2017 WL 4364108 at \*6 (D. Ariz. 2017)). According to Cox, that "reasonable amount of time" ended when Cox terminated the business relationship in June 2016. (Doc. 53 at 11-12); (Doc. 54 at 4-5, ¶ 19.)

Here, the Court finds that the Purchase Agreement is silent regarding the duration of Cox's duties. But this silence does not render the Purchase Agreement ambiguous. The Court also does not agree that Cox's duties under the Purchase Agreement last in perpetuity. Because the Purchase Agreement does not specify an expiration date of Cox's obligations, the Court must determine "what is reasonable under the circumstances." *See Bowen v. Watz*, 5 Ariz.App. 519, 523 (App. 1967) ("Since the agreement did not specify

any particular time for the accomplishment of its purposes, it must be interpreted as lasting for a time reasonable under the circumstances, or until the arrangement becomes impossible or too costly."); *see also M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 936 (2015) (quoting 3 A. Corbin, Corbin on Contracts § 553, at 216) (1960) ("[C]ontracts that are silent as to their duration will ordinarily be treated not as 'operative in perpetuity' but as 'operative for a reasonable time.'"). The Court finds that "what is reasonable under the circumstances" in this case depends on whether it was possible and probable for KEA to still collect monies or equipment on the KEA accounts at the time of the alleged breach. Because the parties dispute whether KEA could still collect, or was still collecting on the 15-year-old KEA accounts in June 2016, (Doc. 46 at 3, ¶ 13); (Doc. 54 at 3, ¶ 13); (Doc. 54-5 at 7, ¶ 30), there remain significant disputes as to material facts. The duration of Cox's duties under the Purchase Agreement must be determined by the trier of fact. The Court therefore **denies** KEA's Motion for Summary Judgment.

### C. Amnesty credits

The Purchase Agreement states that "it is Cox's policy not to permit any Customer to reconnect service so long as any Customer has an outstanding Account balance or unreturned Equipment. *Cox agrees to continue this policy with respect to the Accounts purchased by KEA* and will refer such Customers to KEA for settlement of their Accounts before reconnecting services." (Doc. 46-1 at 3) (emphasis added).

KEA argues that these provisions required Cox to refrain from canceling outstanding balances and equipment owed on the KEA Accounts in exchange for reconnecting services with Cox ("amnesty credits"), unless Cox first referred the customer to KEA for settlement of the account. (Doc. 45 at 13-14.) Cox responds that the Purchase Agreement did not prohibit Cox from forgiving customer balances or from reconnecting services after forgiving a balance. (Doc. 53 at 13.) According to Cox, the Purchase Agreement merely restated Cox's general policy without imposing a contractual obligation to follow it. (*Id*.)

The Court finds that the plain language of the Purchase Agreement unambiguously required Cox to refrain from reconnecting services for customers with outstanding balances

or unreturned equipment unless Cox first referred the customers to KEA for settlement of their accounts. (Doc. 46-1 at 3) ("Cox agrees to continue this policy with respect to the Accounts purchased by KEA.") Because the parties dispute whether the zero balances in ICOMS mean that Cox provided amnesty credits on the KEA Accounts, (Doc. 54 at 5, ¶¶ 22-23); (Doc. 46 at 4-5, ¶¶ 22-23); (Doc. 52-6 at 13), there are material, disputed facts. Whether Cox provided amnesty credits in violation of the Purchase Agreement must be determined by the trier of fact. The Court therefore **denies** KEA's Motion for Summary Judgment.

### D. Cox's duty to report

KEA argues that it is undisputed Cox failed to notify KEA of payments and equipment returns made to Cox by delinquent customers on the KEA accounts. (Doc. 45 at 10-12.) Cox responds (Doc. 53 at 9, 15) that the Purchase Agreement imposes no general obligation to notify or report payments or equipment returns to KEA, but that in any event, Cox accurately reported the data through ICOMS, to which KEA had access for 15 years.

The Court finds that the Purchase Agreement unambiguously imposes a duty on Cox to accurately report to KEA the payments and equipment returns that Cox received on the KEA accounts. That the words "notify" or "report" are not in the Purchase Agreement is immaterial. Cox's duty to report is inherent in its obligations to "share information pertaining to the Accounts and Equipment," (Doc. 46-1 at 3); to "forward all payments it receives on Accounts from and after the Closing Date to KEA," (Doc. 46-1 at 2); and to "pay to KEA the sum of $12.50 for each piece of Equipment . . . regardless if such Equipment is delivered directly to Cox . . . ." (Doc. 46-1 at 3).

Because the parties agree that when KEA had access to ICOMS it contained accurate data about customer payments and equipment returns, the Court **grants** summary judgment in favor of Cox on the portions of Count 1 and 2 that relate to the reporting of payments and equipment returns prior to the termination of KEA's access to ICOMS.[7] If

---

[7] Because the parties have had notice and a reasonable time to respond, the court grants summary judgment for Cox as the nonmovant on these issues, pursuant to Fed. R. Civ. P. 56(f)(1).

- 9 -

the trier of fact determines that Cox's duties to report extend beyond the date on which Cox terminated KEA's access to ICOMS, then the trier of fact may also determine whether Cox breached its duty to report between June 2016 and the present.

**E. Cox's duty to reimburse KEA for payments and equipment returns**

KEA argues that it is undisputed Cox failed to reimburse KEA for all the payments and equipment returns Cox received from customers on the KEA accounts. (Doc. 45 at 12.) Cox responds that KEA has failed to identify the specific KEA accounts for which Cox allegedly failed to reimburse KEA. (Doc. 53 at 17.) Cox has no records currently in its possession, custody or control that identify payments or reimbursements that Cox made to KEA on the KEA accounts. (Doc. 54-5 at 10-11, ¶¶ 4-8.)

The Court finds this is a material, disputed fact that must be resolved by the trier of fact. Accordingly, it is ordered **denying** KEA's Motion for Partial Summary Judgment.

**F. Reporting bankruptcies**

KEA argues that it is entitled to partial summary judgment because Cox materially breached the purchase agreement by failing to notify KEA of customers' bankruptcies after the closing date of the Purchase Agreement. (Doc. 45 at 14.) While the Court could find no allegation in the Complaint to that effect, the Purchase Agreement only required Cox to report and credit the purchase price for bankruptcy filings made *prior* to assignment of the accounts to KEA. (*See* Doc. 46-1 at 2.) Accordingly, the Court **grants** summary judgment for Cox on any claim that Cox failed to report customer bankruptcies after the closing date of the Purchase Agreement.[8]

**G. Purging customer account records**

Finally, KEA argues that it is entitled to partial summary judgment on its claim that Cox breached the Purchase Agreement by purging customer account records. (Doc. 45 at 14.) Cox admits that it does not have any payment records prior to July 2005 in its possession, custody or control, due to a change in its accounting system. (Doc. 54-4 at 3,

---

[8] Because the parties have had notice and a reasonable time to respond, the court grants summary judgment for Cox as the nonmovant on this issue, pursuant to Fed. R. Civ. P. 56(f)(1).

¶ 3.) The Court finds that Cox's duty to preserve records on the KEA accounts is coextensive with Cox's obligations to "set up and maintain a computer terminal" and "maintain sufficient coding records" so that the parties could keep accurate status of the balances. For the reasons stated above, the duration of Cox's duties under the Purchase Agreement to maintain customer account records must be determined by the trier of fact, considering what is reasonable under the circumstances. Therefore, the Court **denies** KEA's Motion for Partial Summary Judgment.

## IV. Cox's Motion for Summary Judgment

### A. Lay testimony

Cox moves for summary judgment on KEA's breach of contract and negligence claims, asserting that KEA improperly relies solely on lay testimony to support its claims for damages. (Doc. 47 at 11-12.) KEA responds that its damages claims are not based on any scientific, technical or other specialized knowledge, such that expert testimony would be required. (Doc. 51 at 10-11.)

Federal Rule of Evidence 701 provides that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Here, KEA's damages calculation is based on a comparison of the numbers in spreadsheets produced by Cox with the spreadsheets produced by KEA. This comparison was made by Bill Eisen, the President and Owner of KEA (Doc. 46-1 at 60, ¶ 2) and KEA's Rule 30(b)(6) deponent. (Doc. 52 at 16, ¶¶ 42, 43.) The Court agrees with KEA that KEA's damage claims are not based on any "scientific, technical, or other specialized knowledge" such that the evidence must be introduced through a qualified expert witness under Federal Rule of Evidence 702. Cox has not shown why the damage calculations proffered by KEA through Mr. Eisen involve anything more than "simple math" and the ability to "read and compare spreadsheets." (Doc. 51 at 11); *see Ryan Development Co., L.C. v. Indiana Lumbermens Mut. Ins. Co.*, 711 F.3d 1165, 1170 (10th Cir. 2013) (noting that the advisory committee's notes to Rule 701 explain that "most courts have permitted the owner or officer of a business to testify to the value or projected

profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert."); *United States v. Lindsey*, 680 F. App'x 563, 566 (9th Cir. 2017) ("The district court did not abuse its discretion in permitting lenders' employees to testify as lay witnesses rather than as expert witnesses . . . [defendant] has offered no explanation for why the witnesses' testimony, which was based on their personal observations while working for the lenders—rather than on scientific, technical, or specialized knowledge—did not qualify as lay testimony."). Accordingly, Cox's Motion for Summary Judgment on these grounds is **denied**.

### B. KEA's damages

Cox additionally moves for summary judgment on KEA's breach of contract and negligence claims, asserting that KEA's damages are too speculative. (Doc. 47 at 8-11.) Cox states that is has produced a complete record of all available ICOMS transactions for the 8,896 account numbers that Plaintiff identified as the KEA accounts, (Doc. 55 at 5), and that summary judgment is appropriate because KEA failed to calculate damages by conducting an account-by-account analysis of every KEA account. (Doc. 55 at 2.)

KEA responds that Cox's improper termination of KEA's access to ICOMS and subsequent refusal to reconcile the KEA accounts has unfairly prevented KEA from calculating the full extent of its damages. (Doc. 51 at 6.) In any event, KEA states that, through the spot check it conducted prior to losing ICOMS access—and by reviewing the "combined research summary spreadsheet" produced by Cox in discovery—it has identified no less than $90,000 in damages. (Doc. 51 at 8, 11); (Doc. 52-7 at 5, ¶ 15.) KEA affirms that this $90,000 figure is based on an account-by-account comparison of Cox's records with KEA's records. (*Id.*) For the remaining amount of stated damages, KEA confirmed at oral argument that its damages calculation is based on the application of a percentage, which KEA derived from its analysis of accounts that are subject to the collections services agreements. KEA additionally maintains that there are still 1700 KEA accounts for which Cox failed to produce transaction records during discovery. (Doc. 51 at 15.) Accordingly, in its Response to Cox's Motion for Summary Judgment, KEA asked the Court to reopen discovery pursuant Rule 56(d) and either order Cox to provide the 1700

purportedly missing transaction records or require that Cox grant KEA access to ICOMS. (Doc. 51 at 15.)

Preliminarily, the Court notes that discovery closed in this case on May 31, 2019. (Doc. 28 at 2.) At no point prior to the close of discovery did KEA raise a discovery dispute with the Court, addressing the 1700 accounts for which KEA claims it is missing transaction histories from Cox. Nor did KEA ask the Court, prior to the close of discovery, to order that Cox grant KEA access to ICOMS. Because KEA moves the Court to allow additional discovery into information it knew it did not possess prior to the close of discovery, KEA's request for additional discovery pursuant to Rule 56(d) (Doc. 51 at 15) is **denied**. *See Qualls By & Through Qualls v. Blue Cross of Calif., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994) (in ruling on a motion to reopen discovery, the Court considers whether the movant diligently pursued its previous discovery opportunities); *see also Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) (failure to conduct discovery diligently is grounds for the denial of a Rule 56(d) motion).

Turning to Cox's argument about speculative damages, under Arizona law, a breach of contract claim requires a plaintiff to demonstrate: (1) the existence of a contract; (2) the breach of the contract; and (3) resulting damages. *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, ¶ 30 (App. 2004). To establish a claim for negligence under Arizona law, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to such standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages. *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563-64, ¶ 7 (2018). Where a plaintiff has not set forth facts that demonstrate to reasonable certainty that it would be entitled to damages, a breach of contract or negligence claim fails as a matter of law. *Coury Bros. Ranches Inc. v. Ellsworth*, 103 Ariz. 515, 521 (Ariz. 1968) ("Damages that are speculative, remote or uncertain may not form the basis of a judgment."). Summary judgment is not appropriate, however, where the plaintiff has demonstrated with reasonable certainty that he would be entitled to damages and has devised some reasonable method of computing his net loss. *See Holliday Fenoglio Fowler, L.P. v. L'Auberge Newco, LLC*, No. CV-15-01180-PHX-SPL, 2017 WL

5569875, at *3 (D. Ariz. 2017); *Gilmore v. Cohen*, 95 Ariz. 34, 36 (1963) (plaintiff's evidence must provide some basis for estimating his loss); *Suroweic v. Capital Title Agency, Inc.*, 790 F.Supp.2d 997, 1001 (D. Ariz. 2011) (*quoting Gilmore v. Cohen*, 95 Ariz. 34 (1963) ("'[C]ertainty in amount' of damages is not essential to recovery when the fact of damage is proven.") (emphasis altered from original)).

The instant case differs from those cited by Cox where the record was either completely devoid of evidence regarding damages, *Red Equip. Pte Ltd. v. BSE Tech, LLC*, CV-13-1003-HRH, 2016 WL 1158738 at *5 (D. Ariz. Mar. 24, 2016) (court granted summary judgment after excluding an exhibit containing plaintiff's damages computation and no other evidence of damages was provided), or where the alleged damages were based purely on testimony without the submission of existing records that would have "added weight to plaintiffs' claim." *Gilmore*, 95 Ariz. at 36. But the Court still cannot excuse KEA's failure to conduct an account-by-account comparison of its records in Debtmaster with the records produced by Cox.

Construing the inferences from the facts in KEA's favor, the Court finds that KEA has reasonably demonstrated that it would be entitled to damages, and that its computation of damages through an account-by-account comparison is a reasonable method, but solely with regard to the $90,210.40 it has purportedly identified through an account-by-account analysis. (Doc. 51 at 4.) The Court finds that any computation of damages based on the application of a percentage too speculative. For damages over $90,210.40, the Court **grants** summary judgment in favor of Cox.

### C. Waiver

Cox argues that it is entitled to summary judgment on Counts 1 and 2 because KEA waived its right to allege breach of the Purchase Agreement by waiting more than 15 years to dispute how the parties operated under the agreement. (Doc. 47 at 14-16.) Cox asserts that KEA was on actual notice that its daily journals were not always accurate because there were instances where customers reported to KEA that they had made payments or equipment returns to Cox that were not reflected on the daily journals. (Doc. 47 at 14.) According to Cox, because it was KEA's course of conduct to then verify the equipment

return or payment in ICOMS and invoice Cox for those amounts, KEA waived its right to challenge the accuracy of Cox's reporting.[9] (*Id*.)

KEA responds that it could not have clearly, decisively, and unequivocally waived its rights to allege a violation of the Purchase Agreement because it had no reason to believe its rights were being infringed until June 2016. (Doc. 51 at 13.) KEA further argues that Cox effectively concealed its failure to report customer payments and equipment returns, obstructing KEA's ability discover the harm. (*Id*.)

The law is clear in Arizona—a "waiver is an intentional relinquishment of a known right." *N. Ariz. Gas Service, Inc. v. Petrolane Transp., Inc.*, 145 Ariz. 467, 476 (App. 1984). "It may be express or inferred from conduct." *Id*. (internal citations omitted). But intent to waive the breach is required. *See City of Tucson v. Koerber*, 82 Ariz. 347, 356 (1957). A party's failure to attempt to enforce its rights regarding a breach of which it was unaware cannot be interpreted as a waiver. *N. Ariz. Gas Service, Inc*., 145 Ariz. at 477; *see also Owen v. Mecham*, 9 Ariz.App. 529, 531-32 (App. 1969). Waiver is a question of fact for the court to decide. *N. Ariz. Gas Service, Inc*., 145 Ariz. at 476.

Because KEA alleges that Cox breached the Purchase Agreement in numerous ways, (Doc. 1-1 at 11-13, ¶¶ 46-62), the Court addresses waiver of each allegation separately. First, the Court cannot say as a matter of law that KEA knew, prior to 2016, that Cox breached its duty to accurately report and provide a proper accounting of the KEA accounts to KEA. (Doc. 1-1 at 11, ¶ 46); (Doc. 1-1 at 12, ¶ 54.) The Court therefore **denies** summary judgment to Cox regarding waiver, and **grants** summary judgment in favor of KEA regarding waiver of those portions of Count 1 and 2.[10, 11]

---

[9] Cox also argued at oral argument that KEA waived its right to allege breach because KEA did not comply with its duties under the Purchase Agreement to "double check" Cox's calculations and notify Cox of any discrepancies. But whether KEA breached that purported duty is a separate question from whether KEA knew that Cox was inaccurately reporting transactions to KEA.

[10] As stated above, because KEA had access to ICOMS for over 15 years, and because the parties agree that ICOMS contained accurate data on the KEA accounts, summary judgment is **granted** for Cox on KEA's claims that Cox failed to accurately report information on the KEA accounts prior June 2016. *See supra* at 9-10.

[11] Because the parties have had notice and a reasonable time to respond, the court grants summary judgment for KEA as the nonmovant on the issue of waiver, pursuant to Fed. R. Civ. P. 56(f)(1).

Second, whether KEA waived its right to claim that Cox breached the Purchase Agreement by failing to remit proper payment to KEA (Doc. 1-1 at 9, ¶ 28); (Doc. 1-1 at 13, ¶ 60)—and whether KEA waived its right to demand reconciliation of the missing amounts (Doc. 1-1 at 9, ¶ 24); (Doc. 1-1 at 11, ¶ 46)—turns on whether KEA knew that Cox had purportedly breached the contract by failing to pay KEA for equipment returns or customer payments on the KEA accounts. *N. Ariz. Gas Service, Inc.*, 145 Ariz. 477; *Owen*, 9 Ariz.App. at 531-32 (requiring knowing acquiescence in the other party's conduct in order to find waiver). Cox does not set forth facts from which the Court could conclude that KEA was purportedly made aware, prior to 2016, of Cox's alleged failure to remit proper payment to KEA. Simply stating that KEA "never once complained of any issue under the Agreement" does not establish that KEA knew Cox was withholding payments owed to KEA and that KEA acquiesced in such conduct. (*See* Doc. 47 at 16.) The Court therefore **denies** summary judgment to Cox, and **grants** summary judgment in favor of KEA regarding waiver of those portions of Counts 1 and 2.

Third, the Court similarly **denies** summary judgment to Cox on KEA's claims that Cox impermissibly offered amnesty credits to customers on the KEA accounts without reimbursing or notifying KEA (Doc. 1-1 at 11, ¶ 46); (Doc. 1-1 at 13, ¶ 62). Nowhere does Cox set forth facts from which the Court can conclude that KEA purportedly knew about the amnesty credits prior to 2016. That KEA never complained of any issues under the Agreement, prior to 2016, does not establish that KEA was aware of, and acquiesced in, Cox's alleged offering of amnesty credits in violation of the Purchase Agreement. Accordingly, the Court **denies** summary judgment to Cox, and **grants** summary judgment in favor of KEA regarding waiver of those portions of Count 1 and 2.

Finally, regarding KEA's claim that Cox breached the terms of the Purchase Agreement by terminating KEA's access to ICOMS in June 2106, (Doc. 1-1 at 11, ¶ 46); (Doc. 1-1 at 13, ¶ 56), the parties' course of conduct during the 15 years prior is irrelevant. Therefore, while Cox did not expressly argue that KEA waived its right to allege that Cox breached the agreement by terminating KEA's access to ICOMS, the Court nonetheless finds that summary judgment is not appropriate on those portions of Count 1 or 2. (Doc. 1-

1 at 11, ¶ 46); (Doc. 1-1 at 13, ¶ 56.) The Court therefore **denies** summary judgment to Cox, and **grants** summary judgment in favor of KEA regarding waiver of those portions of Count 1 and 2.

### D. Statute of limitations

Cox also moves for summary judgment on Count 1 and Count 2, stating that KEA's claims are barred by the applicable statutes of limitations. (Doc. 47 at 16-18.) Cox argues that KEA had access to ICOMS for 15 years, and that therefore KEA could have easily investigated any alleged discrepancies between Debtmaster and ICOMS during that time. (Doc. 47 at 17.) KEA responds that it would have not had standing to sue until 2016, and that in any event, no reasonable diligence could have led KEA to discover facts underlying the cause of action because KEA had no reason to suspect "foul play" until Cox terminated KEA's access to ICOMS. (Doc. 51 at 14.) KEA further argues that Cox "concealed its actions from KEA's review and investigation." (*Id.*)

The statute of limitations for a breach of contract claim in Arizona is 6 years after the cause of action accrues. A.R.S. § 12-548. The statute of limitations for a negligence claim in Arizona is 2 years after the cause of action accrues. A.R.S. § 12-542. Arizona recognizes the discovery rule, meaning that "a plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 588 (1995). The discovery rule applies to breach of contract claims and negligence claims. *Id.* at 591; *Acton v. Morrison*, 62 Ariz. 139, 144 (1945). If a defendant fraudulently conceals facts that would give rise to a cause of action, the statute of limitations is tolled "until such concealment is discovered, or reasonably should have been discovered." *Walk v. Ring*, 202 Ariz. 310, 319 ¶ 35 (2002). When discovery occurs and a cause of action accrues are questions of fact for the jury unless there is no genuine issue of material fact as to whether the plaintiff possessed the minimum requisite knowledge. *Walk*, 202 Ariz. at 316, ¶ 23; *Doe v. Roe*, 191 Ariz. 313, 323 ¶ 32 (1998).

Here, the Court disagrees with Cox that the relevant inquiry is whether KEA *had the opportunity* to discover the alleged breach by searching ICOMS and comparing ICOMS

with Debtmaster. The question is whether a reasonable business in KEA's position would have been put on notice to investigate. *See Walk*, 202 Ariz. at 316, ¶ 23. It is undisputed that during the parties' 15-year relationship, Cox knew that KEA was using the daily journals (and not ICOMS) to generate invoices and reconcile its accounts. (Doc. 48 at 7, ¶ 37); (Doc. 52 at 7, ¶ 37.) While it is also undisputed that a number of customers reported to KEA that they had made payments or equipment returns to Cox that were not reflected on the daily journals, the Court cannot say as a matter of law that a reasonable business in KEA's position would have been on notice to commence investigating whether negligence or breach was involved. Whether KEA was sufficiently put on notice to investigate is a factual determination that must be resolved at trial. Accordingly, it is ordered **denying** summary judgment to Cox.

**V.    Conclusion.**

**IT IS ORDERED denying** Plaintiff's Motion for Partial Summary Judgment – Liability (Doc. 45).

**IT IS FURTHER ORDERED granting** summary judgment to Defendant on Plaintiff's claim (part of Count 1 and part of Count 2) that, prior to June 2016, Defendant failed to accurately report information on the KEA accounts.

**IT IS FURTHER ORDERED granting** summary judgment in favor of Plaintiff on the issue of waiver (part of Doc. 47).

**IT IS FURTHER ORDERED granting** in part Defendant's Motion for Summary Judgment (part of Doc. 47). Summary judgment is granted in favor of Defendant for all damages beyond $90,210.40.

**IT IS FURTHER ORDERED denying** Plaintiff's request (part of Doc. 51) to reopen discovery pursuant to Rule 56(d).

**IT IS FURTHER ORDERED granting** summary judgment in favor of Defendant on Plaintiff's claim that Defendant breached the Purchase Agreement by failing to notify Plaintiff about delinquent customers' bankruptcies.

///

///

Dated this 4th day of February, 2020.

_Michael T. Liburdi_
Michael T. Liburdi
United States District Judge